JOYCE R. BRANDA
Acting Assistant Attorney General
JONATHAN F. OLIN
Deputy Assistant Attorney General
MICHAEL S. BLUME
Director
JEFFREY STEGER
Assistant Director
HEIDE L. HERRMANN
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
450 Fifth Street, NW, Suite 6400 South
Washington, DC 20530
(202) 532-4882 (phone)
(202) 514-8742 (fax)
Heide.Herrmann@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil No. 8:14-CV-1759<br>) |
| SCILABS NUTRACEUTICALS, INC.,<br>a corporation, and<br>PAUL P. EDALAT, an individual, | )<br>) COMPLAINT FOR<br>) <u>PERMANENT INJUNCTION</u><br>) |
| Defendants. | )<br>) |

Plaintiff, the United States of America, by its undersigned counsel, and on behalf of the United States Food and Drug Administration ("FDA"), respectfully represents to this Court as follows:

1. This statutory injunction proceeding is brought under the Federal Food, Drug, and Cosmetic Act (the "Act"), 21 U.S.C. § 332(a), and the equitable authority of this Court, to

permanently enjoin against SciLabs Nutraceuticals, Inc., a corporation, and Paul P. Edalat, an individual, (collectively, "Defendants") from: (a) violating 21 U.S.C. § 331(a) by introducing or delivering for introduction, or causing to be introduced or delivered for introduction, into interstate commerce articles of food (dietary supplements) that are adulterated within the meaning of 21 U.S.C. § 342(g)(1); and (b) violating 21 U.S.C. § 331(k) by causing articles of food (dietary supplements) that Defendants hold for sale after shipment of one or more of their components in interstate commerce to be adulterated within the meaning of 21 U.S.C. § 342(g)(1).

2. This Court has jurisdiction over the subject matter and all parties to this action under 28 U.S.C. §§ 1331, 1337, and 1345 and 21 U.S.C. § 332(a).

3. Venue in this district is proper under 28 U.S.C. §§ 1391(b) and (c).

**Defendants**

4. Defendant SciLabs Nutraceuticals, Inc., is incorporated under the laws of the state of California. SciLabs Nutraceuticals manufactures, prepares, packs, labels, holds, and distributes dietary supplements. SciLabs Nutraceuticals does business at 17809 Gillette Avenue, Irvine, California, within the jurisdiction of this court.

5. Defendant Paul P. Edalat is Chairman of the Board and Chief Executive Officer of SciLabs Nutraceuticals. Mr. Edalat is the most responsible person at the firm. He has ultimate authority over all of the firm's operations, including, but not limited to, product quality, financial decisions, hiring and firing personnel, and product marketing and sales. Defendant Paul P. Edalat performs his duties at SciLabs Nutraceuticals, 17809 Gillette Avenue, Irvine, California, within the jurisdiction of this court.

6. Defendants have been and are now engaged in the business of manufacturing, preparing, packing, labeling, holding, and distributing dietary supplements, within the meaning of 21 U.S.C. § 321(ff). They are contract manufacturers of dietary supplement products distributed under the brand name All Pro Science, including Complete Immune + capsules and variously flavored powders called Complete, Recovery, and Precharge. Except for the purposes of 21 U.S.C. §§ 321(g) and 350f, dietary supplements are deemed to be food under the Act. 21 U.S.C. § 321(ff).

7. Defendants manufacture their dietary supplements using components shipped to them from locations outside the state of California, including Wisconsin, Illinois, and New Jersey. Defendants distribute their dietary supplements to All Pro Science, Inc., which distributes them to locations outside the state of California, such as Oregon, Arizona, Utah, Oklahoma, and Illinois. All Pro Science holds Defendants' dietary supplements in leased warehouse space in SciLabs Nutraceuticals' facility. Defendant Edalat is the director and a shareholder of All Pro Science.

## Defendants' Violations of the Act

8. The Act requires manufacturers of dietary supplements to operate in compliance with current good manufacturing practice for dietary supplements ("Dietary Supplement CGMP"). 21 U.S.C. § 342(g)(1). Manufacturing according to Dietary Supplement CGMP means that the manufacturing process incorporates a set of controls in the design and production processes to assure a finished product of acceptable, predictable, and reliable quality. Dietary supplements not manufactured, prepared, packed, and held in conformance with Dietary Supplement CGMP are deemed to be adulterated. 21 U.S.C. § 342(g)(1). The Dietary Supplement CGMP regulations are set forth at 21 C.F.R. Part 111.

9. FDA conducted an inspection of Defendants' facility on January 21, 22, 29, and February 4, 2014.  That inspection established that the dietary supplements Defendants manufacture, prepare, pack, label, hold, and distribute are adulterated within the meaning of 21 U.S.C. § 342(g)(1), in that they are prepared, packed, or held in a manner that does not conform to Dietary Supplement CGMP.  FDA investigators documented many significant deviations, which include, but are not limited to, the following:

    (A) Failure to conduct at least one appropriate test or examination to verify the identity of every component that is a dietary ingredient before using such component, as required by 21 C.F.R. § 111.75(a)(1)(i);

    (B) Failure to determine whether component specifications that must be established in accordance with 21 C.F.R. § 111.70(b) are met before using such component, as required by 21 C.F.R. § 111.75(a)(2);

    (C) Failure to establish product specifications for the identity, purity, strength, and composition of finished dietary supplement batches, as required by 21 C.F.R. § 111.70(e);

    (D) Failure to prepare and follow a complete written master manufacturing record for each unique formulation of a dietary supplement, and for each batch size, to ensure uniformity in the finished product from batch to batch, as required by 21 C.F.R. §§ 111.205 and 111.210;

    (E) Failure to prepare a batch production record for each batch of a dietary supplement that contains complete information relating to the production and control of the batch, as required by 21 C.F.R. §§ 111.255 and 111.260;

    (F) Failure to document equipment use, maintenance, cleaning, and sanitization in individual equipment logs, as required by 21 C.F.R. § 111.35(b)(2); and

(G) Failure to establish and follow written procedures for the responsibilities of the quality control operations set forth in 21 C.F.R. § 111.105, as required by 21 C.F.R. § 111.103.

10. Defendants violate 21 U.S.C. § 331(a) by introducing or delivering for introduction into interstate commerce articles of food (dietary supplements) that are adulterated within the meaning of 21 U.S.C. § 342(g)(1), in that they have been prepared, packed, or held under conditions that do not meet Dietary Supplement CGMP, 21 C.F.R. Part 111.

11. Defendants also violate 21 U.S.C. § 331(k) by causing the adulteration, within the meaning of 21 U.S.C. § 342(g)(1), of articles of food (dietary supplements) while such articles are held for sale after shipment of one or more of their components in interstate commerce.

**Previous Violations**

12. Defendants have previously violated the Act. Several of the Dietary Supplement CGMP deviations observed during the most recent inspection (referenced in Paragraph 9 above) are the same as, or similar to, those observed by FDA during a previous inspection of Defendants' facility on September 17-20, 25, and October 25, 2013. For example, FDA documented Defendants' failure to conduct at least one appropriate test or examination to verify the identity of every component that is a dietary ingredient before using such component, as required by 21 C.F.R. § 111.75(a)(1)(i) (the same as Paragraph 9(A) above). FDA also documented Defendants' failure to determine whether component specifications that must be established in accordance with 21 C.F.R. § 111.70(b) are met before using such component, as required by 21 C.F.R. § 111.75(a)(2) (the same as Paragraph 9(B) above). In addition, FDA documented Defendants' failure to verify that finished batches of dietary supplements meet product specifications for identity, purity, strength, and composition, as required by 21 C.F.R.

§ 111.75(c) (similar to Paragraph 9(C) above).  Further, FDA documented the following deviations, all of which were subsequently observed during the January/February 2014 at Defendants' facility:  failure to prepare and follow a complete written master manufacturing record for each unique formulation of a dietary supplement, and for each batch size, to ensure uniformity in the finished product from batch to batch; failure to prepare a batch production record for each batch of a dietary supplement that contains complete information relating to the production and control of the batch; and, failure to establish and follow written procedures for the responsibilities of the quality control operations set forth in 21 C.F.R. § 111.105.

13. FDA also inspected Defendants' facility on July 31 and August 1, 2, 14, 2012, and documented the following deficiencies, all of which were subsequently observed during FDA's September/October 2013 inspection described in Paragraph 12 above:  failure to conduct at least one appropriate test or examination to verify the identity of every component that is a dietary ingredient before using such component; failure to determine whether component specifications that must be established in accordance with 21 C.F.R. § 111.70(b) are met before using such component; failure to verify that finished batches of dietary supplements meet product specifications for identity, purity, strength, and composition; failure to prepare and follow a complete written master manufacturing record for each unique formulation of a dietary supplement, and for each batch size, to ensure uniformity in the finished product from batch to batch; and, failure to prepare a batch production record for each batch of a dietary supplement that contains complete information relating to the production and control of the batch.

14. FDA has warned Defendants about their ongoing Dietary Supplement CGMP violations.  At the close of the January/February 2014 inspection, FDA investigators issued a List of Inspectional Observations ("Form FDA-483") to, and discussed each of the observed

deviations with, Defendant Edalat. FDA investigators also issued a Form FDA-483 to Defendant Edalat at the close of the September/October 2013 inspection and discussed each observation with him. In addition, FDA investigators issued a Form FDA-483 to the firm's management at the close of the July/August 2012 inspection. After each inspection, Defendants responded to FDA in writing, promising to take corrective action to ensure that they would come into compliance with Dietary Supplement CGMP.

15.     Following the July/August 2012 inspection, FDA issued a Warning Letter to Defendants on January 25, 2013, detailing violations of the Dietary Supplement CGMP regulations observed during the inspection. All of the CGMP violations described in the letter are the same as, or similar to, the violations FDA observed in the September/October 2013 inspection. The Warning Letter emphasized the serious nature of the violations. The Warning Letter also stated that it was Defendants' responsibility to ensure compliance with the Act and its implementing regulations and that failure to take prompt action to correct the violations may result in legal action, including injunction.

16.     Defendants responded in writing to the Warning Letter with promises to correct their Dietary Supplement CGMP violations. However, Defendants either did not follow through on their promises to correct or failed to fully correct the Dietary Supplement CGMP violations, as shown by the FDA investigators' observation and documentation of ongoing, significant CGMP deficiencies during the September/October 2013. In response to the CGMP deficiencies documented during the September/October 2013 inspection, Defendants again responded in writing with similar promises to take corrective action. Once more, Defendants failed to come into compliance with Dietary Supplement CGMP requirements, as FDA documented during the January/February 2014 inspection at Defendants' facility.

17. Based on the foregoing, Plaintiff believes that, unless restrained by this Court, Defendants will continue to violate the Act in the manner set forth above.

WHEREFORE, Plaintiff respectfully requests that the Court:

I. Order that Defendants, and each and all of their directors, officers, agents, representatives, employees, attorneys, successors and assigns, and any and all persons in active concert or participation with any of them, cease receiving, manufacturing, preparing, packing, labeling, holding, or distributing dietary supplements, unless and until Defendants' methods, facilities, and controls used to receive, manufacture, prepare, pack, label, hold, and distribute dietary supplements are established, operated, and administered in conformity with Dietary Supplement CGMP and the Act, in a manner that has been found acceptable by FDA;

II. Order that Defendants, and each and all of their directors, officers, agents, representatives, employees, attorneys, successors and assigns, and any and all persons in active concert or participation with any of them, be permanently restrained and enjoined under 21 U.S.C. § 332(a) from directly or indirectly doing or causing to be done any of the following acts:

A. Violating 21 U.S.C. § 331(a), by introducing or delivering for introduction, or causing to be introduced or delivered or introduction, into interstate commerce dietary supplements that are adulterated within the meaning of 21 U.S.C. § 342(g)(1); and

B. Violating 21 U.S.C. § 331(k), by causing dietary supplements that Defendants hold for sale after shipment of one or more of their components in interstate commerce to be adulterated within the meaning of 21 U.S.C. § 342(g)(1);

III. Order that FDA be authorized pursuant to this injunction to inspect Defendants' place(s) of business and all records relating to the receipt, manufacture, preparing, packing, labeling, holding, and distribution of all of Defendants' products to ensure continuing

compliance with the terms of the injunction, the costs of such inspections to be borne by Defendants at the rates prevailing at the time the inspections are accomplished; and

      IV.    Order that Plaintiff be awarded costs incurred in pursuing this action, including the costs of investigation to date, and such other equitable relief as the Court deems just and proper.

DATED this __4th__ day of __November_, 2014.

                                        Respectfully submitted,

                                        JOYCE R. BRANDA
                                        Acting Assistant Attorney General
                                        JONATHAN F. OLIN
                                        Deputy Assistant Attorney General
                                        MICHAEL S. BLUME
                                        Director
                                        JEFFREY I. STEGER
                                        Assistant Director

                                        _/s/ Heide L. Herrmann_____
                                        HEIDE L. HERRMANN
                                        Trial Attorney
                                        Consumer Protection Branch
                                        Department of Justice
                                        Civil Division
                                        450 Fifth Street, NW, Suite 6400 South
                                        Washington, D.C. 20530
                                        (202)532-4882 (phone)
                                        (202) 514-8742 (fax)
                                        Heide.Herrmann@usdoj.gov

OF COUNSEL:
WILLIAM B. SCHULTZ
General Counsel

ELIZABETH H. DICKINSON
Chief Counsel
Food and Drug Division

ANNAMARIE KEMPIC
Deputy Chief Counsel for Litigation

CLAUDIA J. ZUCKERMAN
Senior Counsel
Office of the Chief Counsel

Food and Drug Administration
10903 New Hampshire Avenue
Bldg. 31, Room 4550
Silver Spring, MD 20993-0002
301-796-8609